IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

COLUMBUS BANK & TRUST CO.                    *
f/d/b/a Synovus Leasing Company      *
and d/b/a Synovus Capital
Finance,                                     *          CASE NO. 4:07-CV-189 (CDL)

    Plaintiff,                           *

vs.                                          *

McKENZIE TRUCKING & LEASING LLC,     *
STEVE A. McKENZIE, BRIAN E.
ALLSMILLER, DANIEL C. TROTT,         *
WILLIAM S. CAMPBELL, and GREG L.
STEELE,                                      *

    Defendants.                          *

---

O R D E R

    This action arises from the alleged failure of William S. Campbell ("Campbell" or "Defendant") and other defendants to satisfy their payment obligations under a lease agreement with Columbus Bank & Trust Co., f/d/b/a Synovus Leasing Co. and d/b/a Synovus Capital Finance ("Synovus" or "Plaintiff"). Since the commencement of this action, all other defendants except Campbell have expressly acknowledged their default on their payment obligations under the lease agreement and related guaranties. As a result, the Court has entered judgment against the other defendants in the amount of $11,512,003.00. Plaintiff now seeks summary judgment against Campbell, contending that he is identically situated to the other defendants and is likewise liable as a matter of law for the claims asserted against him.

Campbell denies that he has any personal liability based on his present contention that he did not execute the personal guaranty upon which Plaintiff relies in support of its motion for summary judgment. Campbell maintains this position notwithstanding the undisputed fact that he admitted in his Answer to Plaintiff's Complaint and in his responses to Plaintiff's requests for admissions that he did in fact execute the applicable guaranty.   Recognizing the inconsistency between his present position made in response to Plaintiff's motion for summary judgment and his previous admissions *in judicio,* Campbell now seeks to amend his Answer and his admissions.

As explained in more detail below, based upon Campbell's inexcusable delay in seeking to amend his Answer and the undue prejudice that an untimely amendment would cause Plaintiff, the Court denies Campbell's Motion to Amend his Answer (Doc. 71).   This ruling makes Campbell's Motion to Amend his Responses to Plaintiff's Requests for Admissions (Doc. 74) moot.   In light of Campbell's binding admission *in judicio* in his Answer, Plaintiff is entitled to summary judgment, so Plaintiff's Motion for Summary Judgment (Doc. 68) is granted.

FACTUAL BACKGROUND

On December 23, 2004, Synovus entered into a Master Lease Agreement with Resource Leasing Services, LLC.   Under the Master Lease Agreement, Resource Leasing agreed to lease or finance the purchase of "Equipment" from Synovus pursuant to schedules

2

periodically executed by the parties.[1]  (Ex. B to Pl.'s Mot. for Summ. J. ¶ 1.)  Synovus and Resource Leasing entered into Schedules 8, 9, and 10 on August 15, 2006, November 30, 2006, and December 28, 2006 respectively.  Under each of these Schedules, Synovus and Resource Leasing agreed that Resource Leasing would lease or finance the purchase of various pieces of equipment from Synovus in exchange for monthly payments.  (*See generally* Exs. C, D, & E to Pl.'s Mot. for Summ. J.)

On December 29, 2006, Resource Leasing and Defendant McKenzie Trucking entered into an Assignment and Assumption Agreement ("Assignment Agreement").  Under the Assignment Agreement, Resource Leasing assigned to McKenzie Trucking all of its rights and obligations under the Master Lease Agreement and the associated Schedules.  (Ex. F to Pl.'s Mot. for Summ. J. 2 ¶ 3.)

On January 16, 2007, Synovus and McKenzie Trucking entered into an Assignment of Interest in Sub-Lease Agreements ("Sub-Lease Assignment").  Under the Sub-Lease Assignment, McKenzie Trucking assigned Synovus its right, title, and interest under certain sub-lease agreements.  (Ex. G to Pl.'s Mot. for Summ. J. 1-2.) Between December 29, 2006 and January 4, 2007, Defendants Steve A.

---

[1]The Master Lease Agreement granted Synovus an ownership interest or a first priority security interest in the "Equipment" referred to in the Master Lease Agreement. (Ex. B to Pl.'s Mot. for Summ. J. ¶ 9.) This "Equipment" included large trucks and related machinery, as well as accounts receivable, documents, and payment rights arising out of the sale, lease, or disposition of the trucks. (*E.g.*, Ex. C to Pl.'s Mot. for Summ. J. 3.)

McKenzie, Brian E. Allsmiller, Daniel C. Trott, and Greg L. Steele (collectively, "Undisputed Guarantors") executed guaranties that jointly, severally, and unconditionally guarantied McKenzie Trucking's obligations to Synovus under the Master Lease Agreement and the accompanying Schedules. (*See, e.g.*, Ex. H to Pl.'s Mot. for Summ. J. ¶ I.) Synovus contends that Campbell executed an identical guaranty ("Guaranty") during the same time period. (Pl.'s Mem. in Supp. of Mot. for Summ. J. 4.) Campbell denies executing the Guaranty. (Def.'s Resp. to Pl.'s Statement of Material Facts 3.)

On April 25 and 26, 2007, Synovus and McKenzie Trucking entered into Schedules 11, 12, and 13. Like Schedules 8-10, Schedules 11-13 obligated McKenzie Trucking to lease or finance the purchase of equipment from Synovus in exchange for monthly payments. (Exs. I, J, & K to Pl.'s Mot. for Summ. J.)

In the fall of 2007, McKenzie Trucking defaulted under the Master Lease Agreement when it became more than ten days past due on its obligations under Schedules 8-13. On November 6, 2007, Synovus demanded payment of the total amount due under the Master Lease Agreement and Schedules. (Ex. L to Pl.'s Mot. for Summ. J.) McKenzie Trucking failed to satisfy its past due obligations, and it apparently stopped making the payments due under the Master Lease Agreement and the Schedules altogether. (*See, e.g.*, Ex. Q to Pl.'s Mot. for Summ. J. 4.) On November 21, 2007, Synovus filed its Complaint in the State Court of Muscogee County alleging that

McKenzie Trucking, the Undisputed Guarantors, and Campbell were liable for breaching the provisions of the Master Lease Agreement and the Schedules. (*See* Ex. M to Pl.'s Mot. for Summ. J.) Defendants removed the case to this Court on December 27, 2007.

In its Complaint, Synovus alleged that "[o]n December 29, 2006, Campbell executed a guaranty wherein he jointly and severally guaranteed any and all debts or obligations of McKenzie Trucking to [Synovus]." (Ex. M to Pl. Mot. for Summ. J. ¶ 17.) On February 5, 2008, Campbell filed his Answer to the Complaint, admitting that he executed the Guaranty.[2] (Campbell Answer ¶ 17.)

On April 22, 2008, Synovus propounded Plaintiff's First Continuing Request for Admissions to Defendant William S. Campbell ("Requests for Admissions"). (Ex. P to Pl.'s Mot. for Summ. J.) Campbell responded to Synovus's Requests for Admissions on May 16, 2008, and admitted that a true and correct copy of the Guaranty was attached to the Complaint as Exhibit "J", that he executed the Guaranty, and that he agreed to be bound by its terms. (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶¶ 1-2.) Also on

---

[2]Campbell later confirmed in his March 5, 2009 deposition that he reviewed his Answer before his attorney filed it, that he agreed with the Answer's substance, and that in the Answer he admitted that he signed the Guaranty. (Campbell Dep. 61:18-62:7, 65:12-15, Mar. 5, 2009.)

Campbell also testified during his deposition that he did not recall signing the Guaranty. (*Id.* at 55:6-9, 88:6-7, 95:3-13.) Campbell admitted, however, that the signature on the Guaranty looks very similar to his normal signature and that he is not aware of anyone forging his signature on the Guaranty. (*Id.* at 93:1-95:2.) Campbell also affirmed that if he did in fact sign the Guaranty, he is obligated under the McKenzie Trucking indebtedness to Synovus. (*Id.* at 95:14-19.)

May 16, 2008, Synovus and McKenzie Trucking entered into a Forbearance Agreement, in which McKenzie Trucking expressly acknowledged its default under the Master Lease Agreement and that it owed Synovus $11,850,503.94 plus attorney's fees, litigation costs, and other continually accruing charges. (Ex. Q to Pl.'s Mot. for Summ. J. 5 ¶¶ 1-3.)  In conjunction with the Forbearance Agreement, each of the Undisputed Guarantors executed a Guarantor Acknowledgment, acknowledging that they were in default of their Guaranties for failure to satisfy McKenzie Trucking's payment obligations to Synovus. (*E.g.*, Ex. R to Pl.'s Mot. for Summ. J. 3 ¶¶ 1-2.)

Thereafter, McKenzie Trucking defaulted on its obligations under the Forbearance Agreement, and Synovus filed a motion for summary judgment on its claims against McKenzie Trucking and the Undisputed Guarantors.  On October 2, 2008, the Court granted the motion for summary judgment and directed the Clerk to enter a judgment in favor of Synovus against McKenzie Trucking and the Undisputed Guarantors in the amount of $11,512,003.00. *Columbus Bank & Trust Co. v. McKenzie Trucking & Leasing LLC*, No. 4:07-CV-189 (CDL), 2008 WL 4500053, at *6 (M.D. Ga. Oct. 2, 2008).  On June 26, 2009, Synovus filed its presently pending motion for summary judgment on its contractual claims against Campbell as guarantor of McKenzie Trucking's payment obligation to Synovus.  On August 20, 2009, Campbell filed a motion

to amend his Answer and a motion to withdraw and amend his responses to Synovus's Requests for Admissions.

DISCUSSION

## I.   Campbell's Motion for Leave to Amend His Answer

Campbell seeks leave to amend his Answer to strike his admission that he executed the Guaranty, to deny that he executed the Guaranty, and to deny that it was his signature on the document Plaintiff contends is Campbell's Guaranty.  (Def.'s Mot. to Amend Answer 1.) For the following reasons, the Court denies Defendant's motion to amend his Answer.

### A.   Binding Effect of Campbell's Factual Admission

In its evaluation of Campbell's motion to amend his Answer, the Court finds it important to emphasize that Campbell seeks to amend his Answer in a manner that would result in the withdrawal of a binding admission *in judicio* that he executed the Guaranty.  Campbell does not seek to amend his Answer to correct a mistake, add an additional defense, or modify the legal theory of his defense, as is common practice under Federal Rule of Civil Procedure 15(a).  *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1473 ("The function of Rule 15(a) . . . is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer.").  Instead, Campbell seeks a fundamentally different type of amendment: to repudiate and contradict his Answer's

7

express admission of fact.  Therefore, the Court finds it appropriate preliminarily to analyze the binding effect of Campbell's factual admission, in his Answer, that he executed the Guaranty.

It is well-settled law that admissions in an answer are deemed judicial admissions, binding on the party who makes them.  *See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."); *see also Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) ("[A]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." (second alteration in original; internal quotation marks omitted)).  "[J]udicial admissions are proof possessing the highest possible probative value.  Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."  *Best Canvas Prods.*, 713 F.2d at 621 (internal quotation marks omitted).  Consequently, where a defendant admits a particular fact in his answer, he is estopped to deny it later.  *United States ex rel. Stanley v. Wimbish*, 154 F.2d 773, 774 (4th Cir. 1946); *see also Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1984) (per curiam) ("[F]actual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them.  Facts that are admitted in the pleadings are no longer at issue." (alterations in original; citations and internal quotation

marks omitted)).  "Even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings *are binding on the parties and may support summary judgment against the party making such admissions*."  *Mo. Hous. Dev. Comm'n*, 919 F.2d at 1314 (emphasis added); *see also Davis*, 823 F.2d at 108 (holding that plaintiffs were bound by admissions in pleadings and that no factual issue was created by plaintiff's subsequent, contradictory affidavit).

The present circumstances are nearly identical to those in *Missouri Housing Development Commission v. Brice*, 919 F.2d 1306 (8th Cir. 1990).  There, the defendant, one of several alleged note guarantors, moved to amend his answer, in which he admitted executing the guaranty, to repudiate his earlier admission and deny executing the guaranty.  *See id.* at 1314.  After filing his answer, the defendant denied signing the guaranty in his responses to plaintiff's written discovery requests and during his deposition.  *Id.* at 1308. The Eighth Circuit held that despite the defendant's post-pleading evidence contradicting his answer, the defendant remained bound by his answer admission that he signed the guaranty.  *Id.* at 1314-15.

Just as in *Missouri Housing Development Commission*, here Campbell expressly admitted executing the Guaranty in his Answer and then repudiated (or, at least cast doubt upon) his Answer admission in his subsequent deposition (*see, e.g.,* Campbell Dep. 55:6-9, 91:10-14) and discovery responses (Ex. A to Def.'s Resp. to Pl.'s

9

Mot. for Summ. J. 7 ¶ 7).  Also, as in *Missouri Housing Development Commission*, here Campbell produced post-pleading evidence which he claims contradicts his earlier admissions.[3]  The Court finds the Eighth Circuit's *Missouri Housing Development Commission* reasoning to be persuasive, and the Court accordingly holds that Campbell's Answer admissions are binding, unless the Court finds that the circumstances warrant the withdrawal of the admission through amendment of Campbell's Answer.

B.   Rule 15(a) Motion to Amend Standard

"Even an obviously binding admission, of course, may be amended under Fed. R. Civ. P. 15." *Mo. Hous. Dev. Comm'n*, 919 F.2d at 1316. Unless a party is entitled to amend his pleading as a matter of course under Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires."  However, "[t]he decision whether to grant leave to amend is committed to the sound discretion of the trial court."[4] *Shipner v. E. Air Lines, Inc.*, 868

---

[3] Without expressing an opinion on their weight or validity, the Court notes that Campbell produced an affidavit stating he has "no recollection of signing the subject guaranty of the Synovus loan" and a credit card record which shows charges outside his hometown of Cleveland, Tennessee on the Guaranty execution date.  (Campbell Aff. ¶ 10, Aug. 14, 2009; *id.* ¶ 16 & Attach. to Campbell Aff.)

[4] The district court's discretion to grant or refuse leave to amend derives from "its inherent power to manage the conduct of litigation before it."  *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). "While never specified in the Constitution or legislative enactments," the district court's common law "inherent powers" "assisted courts in

10

F.2d 401, 406 (11th Cir. 1989); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).  Therefore, while leave to amend is freely granted when justice so requires, the Eleventh Circuit has made clear that it "is not an automatic right." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (internal quotation marks omitted); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (per curiam) ("[L]eave to amend is by no means automatic.").[5]

In light of Rule 15(a)'s liberal approach to granting leave to amend, the Eleventh Circuit has generally required a substantial reason to justify denial of leave to amend.  *Reese*, 527 F.3d at 1263; *Shipner*, 868 F.2d at 407.  Accordingly, a court may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962).

---

exercising their enumerated judicial powers, such as managing their cases and courtrooms." *Id.* at 1263 n.14 (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1131 n.110 (11th Cir. 2001)).

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Consequently, when a movant's delay hinders judicial economy and prejudices his opponent, the burden shifts to the movant to show good cause to allow the amendment. *Best Canvas Prods.*, 713 F.2d at 623.

### C.   Campbell's Undue Delay and Prejudice to Synovus

#### 1.   *Undue Delay Hindering Judicial Economy*

The strongest factor weighing against Campbell's motion to amend is his inexplicable delay in bringing his motion. Campbell correctly points out that "[m]ere delay in moving to amend a pleading will not generally justify denying a motion to amend." (Def.'s Mem. in Supp. of Mot. to Amend Answer 2.) However, as was explained by the Fifth Circuit Court of Appeals:

> At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive. Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time. While we must give a party a fair chance to present claims and defenses, we also must protect "a busy district court [from being] imposed upon by the presentation of theories seriatim."

*Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. Unit A Nov. 1981) (alteration in original; citations and internal quotation marks omitted); *see also Paschal v. Fl. Pub. Employees Relations Comm'n.*, 666 F.2d 1381, 1384 (11th Cir. 1982) (per curiam) (holding that despite no evidence of bad faith or dilatory motive, unjustified delay coupled with some prejudice justified district court's denial of leave to amend).

12

Campbell filed his motion to amend on August 20, 2009—more than eighteen months after he filed his Answer, and nearly two months after Synovus filed its motion for summary judgment.  The Court finds that such delay was unjustified.  Apparently, after recognizing the likelihood of an adverse summary judgment ruling, Campbell now attempts to rescue his defense by amending his Answer to exclude his damaging admission that he executed the Guaranty.  The Eleventh Circuit, however, has consistently approved the denial of just such motions to amend pleadings "when . . . designed to avoid an impending adverse summary judgment." *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) (citing *Local 472, etc. v. Ga. Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982)).  Further, other courts, in the absence of good cause, have denied motions to amend an answer filed after a delay comparable to Campbell's.  *See Baxter v. Fulton-Dekalb Hosp. Auth.*, 764 F. Supp. 1510, 1525 (N.D. Ga. 1991) (denying motion to amend answer filed eight months after answer); *Alliance Metals, Inc. v. Hinely Indus., Inc.*, No. 1:96-CV-268, 1998 WL 34300554, at *7 (N.D. Ga. Feb. 19, 1998) (denying motion to amend answer filed two years after answer).  Consequently, the Court finds that Campbell's motion to amend his Answer follows an unjustified delay and that allowing it would hinder judicial economy.

### 2.   *Unfair Prejudice to Synovus*

The Court must also evaluate the prejudice to Synovus should Campbell's motion to amend be granted.  During the eighteen-month

13

delay between Campbell's Answer and his motion to amend, Synovus conducted discovery, gathered evidence in support of its claim, and filed for summary judgment in reliance on Campbell's pleadings.  More specifically, Synovus used Campbell's Answer admission that he executed the Guaranty as the foundation of its motion for summary judgment.  (Pl.'s Mem. in Supp. of Summ. J. 10.)  Consequently, allowing Campbell to amend his Answer at this late stage would prejudicially force Synovus to reshape the theory of its case for summary judgment.  *Cf. Mo. Hous. Dev. Comm'n*, 919 F.2d at 1316 ("Plaintiff would have been prejudiced by allowing the amendment, because it had previously been placed on notice that the validity of all of the defendants' signatures to the guaranty was not at issue[.]").  To rectify this prejudice, the Court would have to allow Synovus to re-depose Campbell and conduct other discovery related to the authenticity of the signature on the Guaranty, and allow Synovus to re-file its motion for summary judgment.  Each of these measures would prejudice Synovus, causing it additional trouble and expense. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1487 ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

Campbell contends that Synovus would not be prejudiced by his amendment since Synovus was aware of Campbell's inability to recall

executing the Guaranty and Campbell's suspicion of the circumstances surrounding the Guaranty signature prior to his deposition.[6] (Def.'s Reply in Supp. of Mot. to Amend Answer 2; Def.'s Mem. in Supp. of Mot. to Amend Answer 2.) Therefore, Campbell argues, Synovus "had ample opportunity to question Campbell about the signature on the guaranty and the reasons why Campbell disputes the authenticity of the signature." (Def.'s Reply in Supp. of Mot. to Amend Answer 2.)

It is undisputed that Synovus was aware of Campbell's memory lapse and suspicions prior to Campbell's deposition. (*See* Ex. A to Def.'s Resp. to Pl.'s Mot. for Summ. J. 7 ¶ 7; Campbell Dep. 55:8-13.) Also, Synovus acknowledged Campbell's "doubts" about his Guaranty signature in its motion for summary judgment. (*See* Pl.'s Mem. in Supp. of Summ. J. 7.) Campbell's doubts, however, do not equal a denial.

Prior to Campbell's motion to amend, he never affirmatively denied executing the Guaranty. Rather, Campbell only testified that he could not remember signing the Guaranty (Campbell Dep. 88:2-7;

---

[6]Campbell's contention that he questioned whether the signature was his since the time the Answer was filed is in direct conflict with the record. As evidence of Campbell's early suspicion, Campbell directs the Court to a February 8, 2008 letter from his former attorney to McKenzie Trucking's counsel. (Def.'s Reply in Supp. of Mot. to Amend Answer 1.) The February 8, 2008 letter was written just three days after Campbell filed his Answer (*see* Ex. A to Def.'s Mot. to Amend Answer), which, Campbell testified, he reviewed and agreed with (Campbell Dep. 61:18-62:7). Moreover, the February 8, 2008 letter was written three months *before* Campbell responded to Plaintiff's Request for Admissions, admitting that he "agreed to be bound by the terms of the Guaranty by executing the same." (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 2.) Synovus was reasonable and justified in relying upon the judicial admissions in Campbell's Answer over contradictory extrajudicial statements.

Campbell Aff. ¶ 10, Aug. 14, 2009), that he found the circumstances surrounding the Guaranty signature suspect (Campbell Dep. 64:6-12, 89:1-90:9, 91:15-19, 95:3-6; Ex. A to Def.'s Resp. to Pl.'s Mot. for Summ. J. 7 ¶ 7), and that he *may* be denying that it was his signature on the Guaranty (Campbell Dep. 91:10-14). Even when directly asked by Synovus's counsel whether he denied guarantying the Synovus note, Campbell would only state that "[t]here is question in my mind whether I guaranteed the Synovus [note]." (*Id.* at 55:6-9.)

On the other hand, and more importantly, while Campbell vaguely asserted memory lapses and suspicions in his deposition and discovery responses, he never altered his Answer, which affirmatively stated that he executed the Guaranty. *Cf. Mo. Hous. Dev. Comm'n*, 919 F.2d at 1314, 1316-17 (affirming denial of motion to amend answer where defendant repudiated his answer admission in his deposition and discovery responses but did not bring repudiation to district court's attention until after adversary's summary judgment motion was decided). To the contrary, Campbell affirmed during his deposition that he reviewed the Answer before his attorney filed it, and that he agreed with the content. (Campbell Dep. 61:18-62:7.) Further, Campbell testified that the Guaranty signature looked very similar to his normal signature and that he was not aware of anyone forging his signature. (*Id.* at 93:10-22, 94:21-95:2.) Only after Synovus filed its motion for summary judgment did Campbell decide to inform Synovus, and the Court, that he disavows the judicial admissions in

16

his Answer.   Synovus was justified in its reliance upon Campbell's Answer that he executed the Guaranty.   Consequently, allowing the amendment to Campbell's Answer would cause Synovus undue prejudice.

>    D.   Campbell Fails to Show Good Cause for Amendment

Campbell's excuses for his delay are unpersuasive.   First, he claims he needed "investigation and discovery" to determine whether he actually executed the Guaranty.   Second, Campbell maintains that he was lulled into inaction by the Synovus-McKenzie Trucking Forbearance Agreement he believed would resolve this dispute. Neither excuse rings true.

When the movant, at the time he filed his answer, knew of the facts upon which he now relies in support of his motion to amend, the Court is authorized to disallow the amendment.   *See Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982) ("There was no abuse of discretion where the facts supporting the proposed [amendment] were known at the time of the original answer . . . ."); *see also Reese*, 527 F.3d at 1263-64 (affirming denial of motion to amend pleadings where evidence upon which movant based its amendment was essentially known to movant at time he filed original pleading).   Here, Campbell disingenuously suggests that he did not know, when he filed his original Answer, that he did not sign the Guaranty.   In support of this suggestion, he maintains that he "question[ed] whether the signature was his" from the very beginning. (Def.'s Reply in Supp. of Mot. to Amend Answer 1.)   He does not

explain, however, why he nevertheless unequivocally admitted to signing the Guaranty in his Answer, expressing no reservations at that time.   He maintains that only after "investigation and discovery" did he realize *his own* credit card records showed charges from outside his hometown of Cleveland, Tennessee on the date the Guaranty was purportedly executed.[7]

The Court is mystified and unpersuaded that it would take Campbell eighteen months of investigation and discovery to obtain his own credit card records.  Those credit card records were either known to him or easily accessible at the time he filed his Answer.  The only other evidence underlying Campbell's present contention that he did not execute the Guaranty (the absence of a notary seal, the differing guaranty dates, his allegation others sometimes signed his name, and his inability to recall signing the Guaranty) was also known to Campbell through his own personal experience or available to him through Complaint exhibits when he filed his Answer.  Therefore, since all the evidence upon which Campbell relies in support of his excuse that he needed time for "investigation and discovery" was available to him when he filed his Answer, the Court finds Campbell's excuse unpersuasive.

---

[7]Campbell produced a credit card record for Deborah S. Campbell. (Campbell Aff. ¶ 16 & Attach. to Campbell Aff.)   Consistent with Campbell's contention, the Court assumes the credit card record is for a jointly held family credit card.   The Court here expresses no opinion as to the record's probative value because its substance is irrelevant to this portion of the Order.

In support of his second excuse for his delay, Campbell argues "that at the time Campbell's Answer was filed the Plaintiff had entered into a forbearance agreement with the other defendants [and it] did not appear that the Plaintiff was going to be pursuing this action against Campbell." (Def.'s Reply in Supp. of Mot. to Amend Answer 1-2.) Campbell's contention is factually inaccurate and unpersuasive. Campbell filed his Answer on February 5, 2008. Synovus entered into the Forbearance Agreement with McKenzie Trucking on May 16, 2008, over three months later. Thus, the Forbearance Agreement could not have influenced Campbell's perception of Synovus's litigation intentions at the time Campbell filed his Answer because the Forbearance Agreement did not yet exist.

More importantly, the existence of the Forbearance Agreement could only possibly explain less than two months of Campbell's eighteen-month delay in moving to amend. The Forbearance Agreement was signed on May 16, 2008 and breached by McKenzie Trucking on July 11, 2008. Campbell did not move to amend his Answer until August 20, 2009. Thus, any reliance Campbell placed on the Forbearance Agreement cannot explain why he waited more than a year after termination of the Forbearance Agreement to file his motion to amend his Answer.

Campbell has failed to provide any reasonable basis for excusing his undue delay in seeking to amend his Answer. Consequently, based upon this undue delay and the prejudice to Synovus should Campbell's amendment be allowed, the Court denies Campbell's motion to amend his

Answer.[8]  *See Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041-42 (11th Cir. 2006) (per curiam) (upholding denial of motion to amend where district court found delay and lack of good cause for delay); *Paschal*, 666 F.2d at 1384 (affirming denial of leave to amend where unjustified delay was coupled with some prejudice to adversary).

**II.   Synovus's Motion for Summary Judgment**

Based on Campbell's admission in his Answer that he executed the Guaranty, that fact is conclusively established.   Therefore, as explained below, Synovus is entitled to summary judgment as to its claim against Campbell.

**A.   Summary Judgment Standard**

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When a party moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The movant is

---

[8]Three months after Campbell's Answer admission that he executed the Guaranty, Campbell again admitted in his response to Synovus's Request for Admissions that he "agreed to be bound by the terms of the Guaranty by executing the same." (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 2.)  To disclaim this second express admission that he executed the Guaranty, Campbell also filed a motion to withdraw and amend his response to Synovus's Request for Admissions.  Since Campbell's binding Answer admission conclusively established that he executed the Guaranty, Campbell's motion to withdraw and amend his response to Synovus's Request for Admissions is moot.

entitled to summary judgment if, after construing the evidence in the light most favorable to the non-moving party and drawing all justifiable inferences in its favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. *Anderson*, 477 U.S. at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *accord Anderson*, 477 U.S. at 248.

**B.   Synovus's Summary Judgment Claim Against Campbell**

In an action to recover sums owed under a promissory note or a guaranty, a movant may establish a right to judgment as a matter of law by producing the relevant loan documents, showing that they were executed by the debtor, and by showing that the note or guaranty is in default.[9] *E.g., Vandegriff v. Hamilton*, 238 Ga. App. 603, 603, 519 S.E.2d 702, 703 (1999); *see also Citizens Bank, Douglasville v. Wix*, 154 Ga. App. 249, 249, 267 S.E.2d 856, 857 (1980) ("Since the defendant admitted executing the note in question . . . and since the note, on its face, shows that it is past due and in default, plaintiff established a prima facie right to judgment."). Here,

---

[9]The Guaranty contains a choice of law provision designating the governing law as that of the state of Georgia. (*See* Ex. H to Pl.'s Mot. for Summ. J. ¶ 4.) Neither party appears to contest that Georgia's law governs the Guaranty, so the Court will apply Georgia law.

Synovus produced the Master Lease Agreement and Guaranty as exhibits to its motion for summary judgment (Exs. B & H to Pl.'s Mot. for Summ. J.), and it is undisputed that the Master Lease Agreement and guaranties thereof are in default, *Columbus Bank & Trust Co.*, 2008 WL 4500053, at *2.  Therefore, Synovus is entitled to judgment as a matter of law if it can demonstrate "there is no genuine issue of material fact" as to whether Campbell executed the Guaranty.[10]

Here, Synovus has carried its burden to "show that there is no genuine issue of material fact" as to whether Campbell executed the Guaranty.  By Campbell's admission in his Answer, this fact has been conclusively established.  Thus, Campbell's subsequent attempt to controvert this undisputed fact is unavailing.  Since no genuine issues of material fact remain regarding Campbell's liability, Synovus is entitled to summary judgment on its claim against him.

C.   Synovus's Damages

The amount of Synovus's damages in this case is undisputed.  As of June 23, 2009, the total remaining balance owed to Synovus under the Master Lease Agreement and respective Guaranties is $7,020,637.33.  (Tikkanen Aff. ¶ 3, June 26, 2009.)  Campbell did not contest this amount in his response to Synovus's motion for summary judgment.  Additionally, the Master Lease Agreement and Guaranties contain an attorney's fees provision providing that Campbell, as a

---

[10]Campbell admits that if he signed the Guaranty, he is obligated under the McKenzie Trucking indebtedness to Synovus. (Campbell Dep. 95:14-19.)

22

guarantor, is liable for Synovus's attorney's fees incurred in attempting to collect the amount owed under the Guaranty. (Ex. B to Pl.'s Mot. for Summ. J. ¶ 12; Ex. H to Pl.'s Mot. for Summ. J. ¶ 1.) The attorney's fees provision is valid and enforceable, O.C.G.A. § 13-1-11, and Campbell has not contested his liability under it.  Further, Synovus complied with the statutory attorney's fees limit and notice requirements.[11]  (*See* Ex. L to Pl.'s Mot for Summ. J. 2.)  Therefore, Campbell is also liable for Synovus's $618,328.77 in attorney's fees.  In sum, Synovus's total damages as a result of Campbell's breach of the Master Lease Agreement and Guaranty are $7,638,966.10.

CONCLUSION

As discussed above, the Court denies Campbell's Motion to Amend Answer (Doc. 71).  In addition, the Court does not rule upon Campbell's Motion to Withdraw and Amend Responses to Requests for Admissions (Doc. 74) because that motion is moot in light of the Court's other rulings.  The Court further finds no genuine issues of material fact that Campbell is obligated as a guarantor of the McKenzie Trucking indebtedness to Synovus.  Accordingly, Synovus's Motion for Summary Judgment (Doc. 68) is granted.  The Clerk is

---

[11]O.C.G.A. § 13-1-11(a)(1) provides that, where specified in the note or evidence of indebtedness, attorney's fees provisions "shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness."  Here, the $618,328.77 in attorney's fees Synovus incurred attempting to collect the $7,020,637.33 owed under the Guaranty falls well within the statute's 15% allowance.

directed to enter judgment in favor of Plaintiff and against Defendant Campbell accordingly.

IT IS SO ORDERED, this 23rd day of October, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE